IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**FAHEEM L. BOWERS,**

 **Plaintiff,**

 v.                 **CASE NO. 21-3224-SAC**

**SAMUEL ROGERS, et al.,**

 **Defendants.**

## MEMORANDUM AND ORDER

  Plaintiff proceeds *pro se* and *in forma pauperis* in this civil rights case. At the time of filing, Plaintiff was detained at CoreCivic Leavenworth Detention Center in Leavenworth, Kansas ("CoreCivic"). Plaintiff has since been released from custody.

  On November 5, 2021, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 6) ("MOSC II"), granting Plaintiff until December 3, 2021, in which to show good cause why his why his claims against the CoreCivic defendants, his claims under the FTCA, and his official capacity claims, should not be dismissed for the reasons stated in the MOSC II. On December 6, 2021, the Court entered a Memorandum and Order (Doc. 14) dismissing these claims. The only remaining claim in this case is Plaintiff's individual capacity claim against Mr. Burgss, the Onsite Marshal.

  The MOSC II also directed the officials responsible for the operation of CoreCivic, in cooperation with the USMS, to submit a *Martinez* Report regarding Plaintiff's individual capacity claims against the federal officials. The MOSC II provides that the Report shall be limited to the issue of whether or not the USMS, through an onsite marshal or otherwise, retains control over the day-to-day operations and/or has policy making authority at CoreCivic.

1

The *Martinez* Report has now been filed, and Plaintiff has been provided with a copy of the Report and the sealed exhibits. (Docs. 18, 22, 26.) The Report provides in part as follows:

> In addition to its primary objective to safeguard the federal judicial process through protection and transportation of federal judges and prosecutors, witnesses, and prisoners, USMS manages the housing and care of federal detainees in state, local, and private detention facilities. See United States Marshals Service FY 2020 Annual Report, pg. 5, available at https://www.usmarshals.gov/foia/annual-report-2020.pdf. The agency's Prisoner Operations Division ("POD") is charged with the monitoring and oversight of these detention facilities, including the private facilities with whom USMS contracts. Private detention facility contracts are generally administered by a USMS Contracting Officer, who is responsible for directing or negotiating contract terms, authorizing modification or amendments to contracts, and taking formal action for unsatisfactory contractor performance. *See Exhibit A, Facility Management Agreement,* pg. C3 ¶ 9. The Contracting Officer is assisted by POD, who oversees contractual compliance of the private contractors through 'technical representatives.' *Id*. at ¶ 10. This oversight can, but does not always, include assigning a representative to a specific facility who is responsible for contractual oversight. These POD employees often have offices within the facility and generally monitor contract compliance but do not have any operational authority over the day-to-day decision making of the facility. *See Exhibit B, Declaration of Theodric Anderson*, ¶ 9.
>
> CoreCivic, Inc. ("CoreCivic") is a Maryland Corporation headquartered in Nashville, Tennessee. CoreCivic owns and operates the Leavenworth Detention Center ("LDC"), a maximum security facility housing detainees who have been charged with federal offenses and are awaiting a hearing, trial, or sentencing. CoreCivic is responsible for the overall operation of LDC, including staff recruitment, general administration of the facilities, facility maintenance, security, and supervision of the offenders. *See Exhibit A, Facility Management Agreement,* pg. C8, 42-43. LDC was first awarded the contract with USMS in 1990 and was subsequently renewed twice. The contract's current iteration was awarded in 2007 for an initial five (5) year term and three (3) subsequent option periods of five (5) years each. S*ee Exhibit C, Facility Management Agreement Executive Approval Form*. USMS did not exercise its third option to extend the contract with LDC; therefore, this contract terminated on December 31, 2021.
>
> The LDC contract requires CoreCivic to provide comprehensive detention services. The contract requirements are

> divided into six (6) functional areas: (a) administration and management; (b) security, control and detainee accountability; (c) workforce integrity; (d) healthcare services; (e) food service; and (f) detainee services and programs. *See Exhibit A* at C1-C2. The contract specifically provides that "[t]he Contractor shall furnish all personnel, management, equipment, supplies and services necessary for the performance of all aspects of the contract." *See Exhibit A,* pg. C8, 42-43. Furthermore, "[t]he Contractor is responsible for management and quality control actions necessary to meet the quality standards set forth in the contract." *Id*. at C11, 8-9.
>
> * * * *
>
> The USMS is not involved in the creation or the implementation of CoreCivic policies and procedures governing the operation of the facility. *See Exhibit D, Affidavit of Todd Thomas,* ¶ 9-10; *see also Exhibit J, CoreCivic Policy 1-1, Policy Management*. Furthermore, the USMS does not control or direct the actions of LDC employees on a day-to-day basis. *Id*. at ¶ 11. The USMS does not place an agent or other representative at the LDC for ongoing oversight. *See Exhibit B* at ¶ 5. The POD places one contract compliance coordinator at the facility; at all relevant times, Mr. James Burgess was the contract compliance coordinator for the Leavenworth Detention Center. *See Exhibit B* at ¶ 6-7. However, Mr. Burgess is tasked only with ensuring contract compliance and reporting to POD in the event there are issues; he has no responsibility for day-to-day operational decision making. *See Exhibit B* at ¶ 8-10.

(Doc. 18, at 1–3.)

The Report also provides that prior to August 4, 2021, no formal internal policy pertaining to an ongoing lockdown was in place at CoreCivic. *Id*. at 3–4. A facility-wide lockdown was initiated on August 4, 2021, following a series of incidents at CoreCivic. *Id*. at 4. The Report provides that:

> The lockdown implementation plan was developed by LDC Assistant Warden Joseph Roemmich at the direction of Todd Thomas, CoreCivic's Managing Director of Operations, and Jason Medlin, CoreCivic's Vice President of Facility Operations. *See Exhibit E,* ¶ 5. Mr. Medlin informed Theodric Anderson, Chief of POD, of the plan as required by the terms and conditions of their contract with USMS; however, POD was not involved in developing

3

or implementing the plan. *Id*. at ¶ 6, 8.

*Id*. at 4. The Report further provides that the neither the USMS nor POD was involved with distributing information regarding the lockdown to detainees, and no POD or USMS agent or other representative was involved in monitoring compliance with the lockdown. *Id*. at 4–5.

In light of the *Martinez* Report and exhibits, the Court is considering dismissal of the remaining claims in this case. The Report shows that no USMS agent or employee controlled the day-to-day operations at CoreCivic or had the ability to control the development or implementation of the internal policies and procedures at CoreCivic. The Court will grant Plaintiff an opportunity to respond to the Report and to show good cause why his remaining claims should not be dismissed.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **April 11, 2022,** in which to respond to the *Martinez* Report and to show good cause why his remaining claims should not be dismissed.

**IT IS SO ORDERED**.

**Dated March 10, 2022, in Topeka, Kansas.**

                                                      **S/ Sam A. Crow**
                                                      **SAM A. CROW**
                                                      **SENIOR U. S. DISTRICT JUDGE**